IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| DANIEL ORLINO, JR.,<br><br>              Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF CORRECTIONS;<br>MELVIN MARTINEZ;<br>CHRISTOPHER STRAUGHAN,<br>and DOE OFFICERS 1–4,<br><br>              Defendants. | Case No. 3:22-cv-00197-JMK<br><br>**ORDER REGARDING<br>PENDING MOTIONS** |

Before the Court are several motions. At Docket 63, Plaintiff Daniel Orlino, Jr., moves for judicial review of the State of Alaska's certification that Defendant Christopher Straughan was acting in the scope of his employment with respect to certain claims and its substitution as party defendant under Alaska Stat. § 09.50.253(c) with respect to those claims. At Docket 64, Mr. Orlino moves to seal certain exhibits. At Docket 66, Plaintiff Daniel Orlino, Jr., moves for partial summary judgment that Alaska may not be substituted as a defendant for claims against Mr. Straughan. Finally, at Docket 71, Mr. Straughan moved to seal certain exhibits submitted as part of his opposition.

For the following reasons, the Court **DENIES** the *Motion for Partial Summary Judgment* at Docket 66 and **DENIES** the *Motion for Judicial Review* at Docket 63. The *Motions to Seal* at Dockets 64 and 71 are **GRANTED**. Pursuant to the Court's Protective Order at Docket 62, the exhibits, which were filed conventionally as indicated at Dockets 65 and 71, will be sealed.

## I.  BACKGROUND

The following facts are undisputed unless otherwise noted. At the time of the events related to this suit, Mr. Orlino was incarcerated at Anchorage Correctional Complex ("ACC").[1] There, he was placed in ACC's "Echo" module, a unit which typically houses newly-remanded inmates with acute medical or mental health issues.[2] On April 27, 2021, medical staff at ACC started Mr. Orlino on a drug withdrawal protocol.[3]

On April 29, 2021, Mr. Orlino engaged in a verbal altercation with Melvin Diaz Martinez, a temporary contract nurse at ACC.[4] When the altercation began, Mr. Straughan, a corrections officer at ACC, was assisting Mr. Martinez in taking Mr. Orlino's vital signs pursuant to the drug withdrawal protocol.[5] When Mr. Orlino and Mr. Martinez accosted one another, Mr. Straughan ordered Mr. Orlino to return to his cell and secured the door.[6] The parties dispute whether Mr. Orlino then threw a liquid at

---

[1] Def.'s Ex. A (SEALED) at 42. N.B. The parties submitted the exhibits they rely on for this motion conventionally, as indicated at Dockets 65 and 71. Accordingly, the Court cites to exhibit identifiers rather than the docket.

[2] Def.'s Ex. A (SEALED) at 42–43.

[3] Def.'s Ex. B (SEALED) at 92–93.

[4] Def.'s Ex. D (SEALED) at 33–42; Def.'s Ex. E (SEALED) at 1; Docket 63-4.

[5] Def.'s Ex. A (SEALED) at 45–46; Docket 63-4 (incident report); Pl.'s Ex. 4 (SEALED).

[6] Docket 63-4.

*Orlino v. Dep' of Corr., et al.,*                                                     Case No. 3:22-cv-00197-JMK
Order Regarding Pending Motions                                                                          Page 2
Case 3:22-cv-00197-JMK   Document 103   Filed 05/31/24   Page 2 of 12

Mr. Martinez. As a result of the incident, corrections staff temporarily removed Mr. Orlino from the "Echo" module.[7] The next morning, staff returned Mr. Orlino to the "Echo" module and Mr. Martinez provided treatment consistent with the drug withdrawal protocol without incident.[8]

That evening, on April 30th, Mr. Martinez and Mr. Orlino had a second altercation as Mr. Martinez was taking Mr. Orlino's vital signs as part of the drug withdrawal protocol.[9] After the two exchanged comments, Mr. Martinez assumed a fighting stance and Mr. Orlino stood up to face him.[10] Mr. Martinez then threw a chair that had separated him from Mr. Orlino.[11] In response, Mr. Straughan ordered Mr. Orlino to return to his cell and stepped away to allow him to do so.[12] When Mr. Orlino did not follow his order, Mr. Straughan called for a lockdown, directed everyone else to return to their cells, and radioed for backup.[13] Mr. Straughan stepped between the two men to keep them apart and ultimately shepherded Mr. Orlino back into his cell.[14] During the altercation, Mr. Martinez struck Mr. Orlino.[15]

---

[7] Def.'s Ex. B (SEALED) at 114–15; 197–98.
[8] Def.'s Ex. B (SEALED) at 114–15; 197–98.
[9] Def.'s Ex. B (SEALED) at 130–35; Def.'s Ex. D (SEALED) at 39–42; Pl.'s Ex. 6 (SEALED); Pl.'s Ex. 7 (SEALED).
[10] Def.'s Ex. B (SEALED) at 130–35; Def.'s Ex. D (SEALED) at 39–42; Pl.'s Ex. 7 (SEALED).
[11] Pl.'s Ex. 7 (SEALED).
[12] Def.'s Ex. B (SEALED) at 132; Def.'s Ex. D (SEALED) at 41; Pl.'s Ex. 6 (SEALED).
[13] Def.'s Ex. B (SEALED) at 137–39.
[14] Def.'s Ex. D (SEALED) at 42; Pl.'s Ex. 6 (SEALED); Pl.'s Ex. 7 (SEALED).
[15] Def.'s Ex. B (SEALED) at 130–35; Pl.'s Ex. 6 (SEALED).

*Orlino v. Dep' of Corr., et al.*,                                      Case No. 3:22-cv-00197-JMK
Order Regarding Pending Motions                                      Page 3
Case 3:22-cv-00197-JMK   Document 103   Filed 05/31/24   Page 3 of 12

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] A material fact is one that "might affect the outcome of the suit under the governing law."[17] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[19] To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[20]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[21] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[22] A party cannot "defeat

---

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1031 (9th Cir. 2010).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[20] Fed. R. Civ. P. 56(c)(1).

[21] *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[22] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[23]

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[24] Ultimately, in ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[25]

## III.   DISCUSSION

### A.    Partial Summary Judgment that the State May Not Be Substituted as a Party Defendant under Alaska Stat. § 09.50.253(c) is Denied

Mr. Orlino moves for partial summary judgment that the State may not certify that Mr. Straughan was acting in the scope of his employment and be substituted as a defendant for all claims against him.[26] First, Mr. Orlino argues that certification under Alaska Stat. § 09.50.250(f) is unavailable in federal court, citing to a footnote in *Blakeley v. Gunderson*, in which Judge Gleason notes that "[a] plain reading of the text of Alaska Statute § 09.50.253(c) indicates that it applies only to proceedings in state court" and that "[t]here is no indication that the statute would apply in a federal court proceeding, where

---

[23] *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).
[24] *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).
[25] *Scott v. Harris,* 550 U.S. 372, 378 (2007).
[26] Docket 66.

the state has not waived its sovereign immunity."[27]  Second, he asserts that certification is

barred because Mr. Orlino alleges that Mr. Straughan violated his constitutional rights.[28]

The State does not dispute that certification does not apply to federal

constitutional claims, but responds that certification is proper with respect to state claims

when a case is commenced in state court and removed to federal court.[29]  Specifically, the

State argues that the plain language of the statute authorizes substitution in such cases.[30]  It

further points out distinctions between this case and *Blakeley* and highlights other federal

cases in which substitution was permitted following removal.[31]

Alaska Stat. § 09.50.253(c) provides that "[u]pon certification by the

attorney general that the state employee was acting within the scope of the employee's

office or employment at the time of the incident out of which the claim arose, any civil

action or proceeding commenced upon the claim in a state court is considered an action or

proceeding against the state under the provisions of this title, and the state is substituted as

the party defendant."  By its express terms, the statute applies to "any civil action or

proceeding commenced upon the claim in a state court," which includes civil actions

removed to federal court.[32]  This understanding of Alaska Stat. § 09.50.253(c) is bolstered

by this Court's prior cases, which have routinely permitted certification in cases removed

---

[27] Docket 66 at 2–3 (quoting *Blakeley v. Gunderson*, No. 3:22-cv-00035-SLG, 2022 WL 18025228, at *3 n.27 (D. Alaska Dec. 30, 2022)).
[28] Docket 66 at 1–5.
[29] Docket 74 at 2.
[30] *Id.* at 4–6.
[31] *Id.* at 6–8.
[32] Alaska Stat. § 09.50.253(c).

from the Alaska state courts.[33]  Although Judge Gleason's in *Blakeley* states that "there is no indication that the statute would apply in a federal court proceeding," that case is inapposite here.  *Blakeley* was commenced in federal court, not removed, and therefore falls outside the ambit of the statute.[34]

Mr. Orlino is correct that the State may not be substituted with respect to his federal constitutional claims.[35]  But this issue is academic as the State never sought to stand as party defendant with respect to those claims and disclaims any intent to do so.[36]  Mr. Orlino's *Motion for Partial Summary Judgment* is **DENIED**.

## B.     The State's Certification under Alaska Stat. § 09.50.253(c) is Appropriate

Mr. Orlino next challenges the Attorney General's certification that Mr. Straughan was acting within the scope of his employment during the events at issue in this case.[37]  Mr. Orlino argues that Mr. Straughan acted outside the scope of his employment when he failed to stop Mr. Martinez from assaulting Mr. Orlino.[38]  Specifically, Mr. Orlino asserts that Mr. Straughan's inaction was either reckless or grossly negligent and thus falls outside his scope of employment as defined by statute.[39]  The State responds that Mr. Straughan did not act recklessly or with gross negligence by failing to

---

[33] *E.g., Roth v. State*, No. 5:15-cv-00001-SLG, 2016 WL 614353, at *4–6 (D. Alaska Feb. 16, 2019); *MacMurrary v. Wells, and State of Alaska*, No. 4:13-cv-0020-RRB, 2014 U.S. Dist. LEXIS 33961, *1 (D. Alaska Jan. 10, 2014).

[34] *See* Docket 1, *Blakeley v. Gunderson*, No. 3:22-cv-00035-SLG.

[35] *See MacMurray*, 2014 U.S. Dist. LEXIS 33961 at *1.

[36] *See* Docket 55; Docket 74 at 2.

[37] Docket 63.

[38] *Id.* at 7.

[39] *Id.* at 8.

take action to prevent an assault.[40]  In its view, the record demonstrates that Mr. Straughan

acted immediately in response to the assault and thus acted within the scope of his

employment under the certification statute.[41]

"Alaska Statute 09.50.253 addresses tort claims against state employees

acting within the scope of their employment."[42]  "Under the statute, if the attorney general

certifies that a state employee was acting within the scope of employment when the claim

arose, then the claim is against the State and the State is automatically substituted as a party

defendant."[43]  Alaska Stat. § 09.50.253 is modeled after the federal Westfall Act, which is

"designed to immunize covered federal employees not simply from liability, but from

suit."[44]

The Alaska Supreme Court has established certain principles that guide

Alaska courts' review of certification decisions under Alaska Stat. § 09.50.253:  "(1) the

standard of review for the certification decision should be de novo; (2) the burden of proof

lies upon the plaintiff challenging certification to prove that the defendant[] [was] not

acting within the scope of their employment; (3) the court should apply the factors in

AS 09.50.253(h)(1) for the scope-of-employment determination; (4) the outcome should

be decided by the court, not a jury; and (5) the determination should be made prior to

---

[40] Docket 70 at 2–3, 13–15.

[41] *Id.* at 13–15.

[42] *Watkinson v. Dep't of Corr.*, 540 P.3d 254, 274 (Alaska 2023) (citing Alaska Stat. § 09.50.253(a)).

[43] *Id.* (citing Alaska Stat. § 09.50.253(c)).

[44] *Osborn v. Haley*, 549 U.S. 225, 238 (2007); *see also State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1087 (Alaska 2012) (noting that "[b]ecause the Westfall Act and AS 09.50.253 contain nearly identical language, and because AS 09.50.253 was based on the Westfall Act, federal decisions construing the Westfall Act are persuasive authority in construing AS 09.50.253").

trial."[45]  Additionally, "[i]f there are disputed issues of fact," the court must "hold an evidentiary hearing and make factual findings, then decide the certification question prior to trial."[46]  "If no disputed issues of material fact exist, the court may resolve the issue on summary judgment."[47]

Acts or omissions within the "scope of employment" are defined as acts or omissions "(A) that the State employee is employed or authorized to perform; (B) of the State employee that occur substantially within the authorized time and space limit; (C) that are activated by a purpose to serve the State; and (D) that do not constitute acting, or failing to act, with wilful, reckless, or intentional misconduct, or with gross negligence or malice[.]"[48]  "This statutory definition is distinct from the definition of 'scope of employment' that [Alaska courts] have adopted for private employers and municipalities, which includes intentional torts if they are foreseeable based on the type of employment."[49] "This difference allows suits for intentional torts against state employees to proceed, even though the state is largely immune from those suits."[50]

Mr. Orlino focuses on the fourth element of the statutory definition of acts within the scope of employment and argues that Mr. Straughan's inaction on April 30th, given the prior altercation between Mr. Orlino and Mr. Martinez, was either reckless or constituted gross negligence.[51]  However, Mr. Orlino has not shown that Mr. Straughan's

---

[45] *Heisey*, 271 P.3d at 1090–91.
[46] *Id.* at 1091.
[47] *Id.*
[48] Alaska Stat. § 09.50.253(h)(1).
[49] *Watkinson*, 540 P.3d at 275.
[50] *Id.*
[51] Docket 63 at 7–8.

*Orlino v. Dep' of Corr., et al.*,                                                                        Case No. 3:22-cv-00197-JMK
Order Regarding Pending Motions                                                                                          Page 9
Case 3:22-cv-00197-JMK   Document 103   Filed 05/31/24   Page 9 of 12

alleged inaction was reckless or constituted gross negligence. Gross negligence is "an extreme departure from the ordinary standard of care."[52] Reckless misconduct has not been defined by the Alaska Supreme Court in a civil case, but Alaska's criminal statutes provide that "a person acts 'recklessly' with respect to a result or to a circumstance . . . when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[53]

Mr. Orlino argues that Mr. Straughan "took no action to prevent contact between Martinez and Daniel on 4/30/21" and that "he was grossly negligent and disregarded an obvious risk that Daniel was about to be punched again."[54] But these assertions are belied by the record before the Court. Both Mr. Orlino's and Mr. Martinez's depositions, as well as security video footage, reflect that Mr. Straughan responded to the situation immediately—ordering Mr. Orlino to return to his cell, calling for a lockdown, radioing for backup, and then stepping between the two men until Mr. Orlino could be moved back into his cell.[55]

In his Reply, Mr. Orlino argues that Mr. Straughan had a legal duty to protect Mr. Orlino from foreseeable assault.[56] Although the Department of Corrections owes

---

[52] *Storrs v. Lutheran Hosps. & Homes Soc. of Am., Inc.*, 661 P.2d 632, 634 n.1 (Alaska 1983) (internal quotations and citations omitted).
[53] Alaska Stat. § 11.81.900(3).
[54] Docket 63 at 8.
[55] Ex. B (SEALED) at 132, 137–39; Ex. D (SEALED) at 41–42; Ex. 6 (SEALED), Ex. 7 (SEALED).
[56] Docket 75 at 3–4.

*Orlino v. Dep' of Corr., et al.*,                                                    Case No. 3:22-cv-00197-JMK
Order Regarding Pending Motions                                                       Page 10
Case 3:22-cv-00197-JMK   Document 103   Filed 05/31/24   Page 10 of 12

inmates a duty to protect them from "reasonably foreseeable assaults by other inmates,"[57] the existence of that duty is not relevant to the propriety of the State's certification under Alaska Stat. § 09.50.253(c).  A breach of this duty does not, in and of itself, demonstrate gross negligence or reckless misconduct.

Finally, Mr. Orlino suggests in his Reply that Mr. Straughan acted outside the scope of his employment because he violated Mr. Orlino's constitutional rights.[58] Again, a violation of Mr. Orlino's constitutional rights would not itself demonstrate gross negligence or reckless misconduct.  And Mr. Orlino does not articulate how the alleged violation of his constitutional rights shows Mr. Straughan acted outside the scope of his employment as defined by Alaska Stat. § 09.50.253(h)(1).

Mr. Orlino has not shown that Mr. Straughan acted recklessly or with gross negligence.  Accordingly, he has not carried his burden to prove that Mr. Straughan was not acting within the scope of his employment.[59]  The *Motion for Judicial Review* is **DENIED**.  The State is substituted as party defendant for all state law claims asserted against Mr. Straughan.

### IV.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.      Mr. Orlino's *Motion for Judicial Review* at Docket 63 is **DENIED**.

---

[57] *Jovanov v. State Dep't of Corr.*, 404 P.3d 140, 146 (Alaska 2017) (internal quotations and citations omitted).

[58] Docket 75 at 6–9.

[59] *Heisey*, 271 P.3d at 1090–91.

2.      Mr. Orlino's *Motion for Partial Summary Judgment* at Docket 66 is

**DENIED**.

3.      The *Motions to Seal* at Dockets 64 and 71 are **GRANTED**.

IT IS SO ORDERED this 31st day of May, 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Orlino v. Dep' of Corr., et al.*,                                                                    Case No. 3:22-cv-00197-JMK
Order Regarding Pending Motions                                                                                     Page 12
Case 3:22-cv-00197-JMK   Document 103   Filed 05/31/24   Page 12 of 12